[Crim. No. 230. Fifth Dist. July 26, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. SIDNEY RIGHTNOUR, Defendant and Appellant.

James A. Gardner, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Theodore T. N. Slocum, Deputy Attorneys General, for Plaintiff and Respondent.

McMURRAY, J. pro tem.* — Defendant appeals from a judgment sentencing him to state prison after he was found guilty by a jury of violation of Health and Safety Code section 11500, possession of narcotics.

On May 16, 1965, a pharmacy in Madera was burglarized and certain narcotics were taken therefrom. The appellant was in the area at that time. His conviction was based on the knowing possession of these narcotics which were subsequently found in a Los Banos hotel room which appellant was occupying as a guest of one Raithel.

Raithel had occupied Room 25 at the Los Banos hotel for approximately two years. He worked as a card dealer for a local club. Appellant, a friend of Raithel's, visited him on Friday, May 28, 1965, to discuss the possibility of opening up a card room. When appellant arrived he brought none of his clothing or other possessions but did stay overnight. Raithel did not expect appellant to remain in the room thereafter, but testified it was perfectly all right if appellant did so. When Raithel left for work Saturday afternoon, he parted company with appellant, and upon returning from work at about 1 a.m. on Sunday, May 30th, he found a note from appellant stating he had gone to either Sacramento or Stockton. Later that day Raithel left his room for a trip to Madera and did not return until Thursday, June 3d. When Raithel left, there were no narcotics in his room. On at least two days during Raithel's absence appellant used his hotel room, apparently gaining access by a key which he had. He was seen by the maid in the hallway outside the room both on Tuesday, June 1st, and Wednesday, June 2d. On the 1st, the maid saw appellant going up and down the stairs all day. Whenever she attempted to enter the room to clean it appellant would come back upstairs. He appeared to be drunk and incoherent, but did not smell of alcohol. On Wednesday, June 2d, the maid again saw appellant in the hotel hallway. His speech was somewhat clearer and he told the maid he was "trying to clean the room up." At about 1 o'clock on that date appellant left the hotel and did not return. The room was locked when appellant left and was not opened until 4 o'clock that afternoon when the maid entered to clean it. No one else entered the room between appellant's departure and the time the maid entered.

Before the maid entered the room appellant was arrested in Los Banos by Officer Brownell on a traffic warrant issued from

*Assigned by the Chairman of the Judicial Council.

Madera County. Although the arresting officer did not possess the warrant, he had the number of the warrant at that time. This arrest took place at approximately 3:50 p.m. on June 2d. The arresting officer learned of the warrant approximately one-half hour before the arrest and during that time he also learned that appellant was in town.

When the maid, performing her regular cleaning duties, entered the room at 4 p.m. she opened the door and saw burnt bedding, window blinds torn down, a bed lamp knocked over, and a great many papers and cigarettes strewn on the floor. The bedspread was burned, the blankets had holes in them and the sheets and mattress pad were burned through to the mattress. The holes apparently were from cigarette burns. Lying on top of an open suitcase on the floor was a letter addressed to appellant. In plain sight on a table were a syringe, a needle, some white powder and a spoon. There were some paper bags visible through an open closet door which the maid did not examine. There was also some clothing which had not been there before the maid's four-day absence from the hotel from May 28th through May 31st. The maid knew Raithel's clothing and recognized that some of the clothing did not belong to him.

Upon discovering the burnt bedding the maid immediately reported it to the owner-operator of the hotel. About a week before this incident, the owner had discovered papers burning against a wall of his hotel which had the appearance of an intentionally set fire and he had warned his hotel staff to make constant checks in the area every half hour and to be alert to any recurrences. He therefore went immediately to the room with the maid and saw the extremely disordered condition of the room. The burnt bedspread and sheets disturbed him most. He called the police because, as he testified, he was concerned about the safety of his tenants and his building because of the ''fire problem'' and the possibility of burglary. He also testified that he did not notice or pay any attention to any needles, syringe or other paraphernalia in the room. The owner knew Raithel was away and called the police regarding the incident in the room. This call was relayed to the Los Banos police chief in his radio car. The chief knew that appellant had been arrested on the traffic warrant and that he had been residing in the hotel. The officer accompanying the chief knew the appellant was in custody but did not know his address. This officer had received prior notice from the Madera police that the appellant was wanted for burglary but had not caused appellant's arrest. He connected appellant's name with that

given by the Madera police, but did not form any connection between appellant and the incident at the hotel in regard to the burnt bedding and torn-up room. The officer's purpose in going to the hotel was only in response to the owner's call regarding the condition of the room.

When the officers arrived at the hotel the owner asked them to accompany him to the room and observe its condition and see what could be done about it. The officers did not ask to be admitted to the room, but the owner took them there and showed them the burned spots on the bed and the condition of the room. Upon entering the room the officers had no idea that it would contain any narcotics or narcotics paraphernalia, but upon entering the room they saw in plain view a needle, syringe and other items. Upon leaving they took with them a spoon, two hypodermic needles, an eyedropper and some white powder, all of which were in plain sight. They did not, however, at that time conduct any further search. The next day the police communicated with a Madera police officer, stating that they would secure a search warrant for the room in order to look for further narcotics or narcotics paraphernalia. On June 3d Raithel returned to his room and was advised by the owner of the hotel that there had been an incident which had occurred in his room and that he was not to remove or disturb anything located there. Raithel had never given permission to the earlier search of the room. When he entered his room he found narcotics and appellant's clothing.

On Friday, June 4th, at about 1 p.m., two police officers talked with Raithel in the lobby of the hotel. One officer told Raithel he was going to get a search warrant for the room and Raithel replied that he could search the room at any time he wanted. The evidence is somewhat conflicting but both officers testified that one of them went upstairs with Raithel, who showed the officer a bottle containing a pink liquid, later identified as a narcotic. The officers, however, did not remove the articles nor did they conduct any further search.

Subsequently a search warrant was issued for the room and at 4 p.m. on June 4th the chief of police, the hotel owner and some other officers entered the room and conducted a search pursuant to the warrant. At that time Raithel had told the officers, ''You don't need a search warrant.'' In the closet of the room where appellant's clothes were hung, the officers found a paper bag filled with various narcotics. In the bag among the bottles of narcotics was a letter addressed to appellant. Also found were a bottle and two bent spoons bearing

traces of codeine. Some of these articles were later identified as having been taken from the drugstore in Madera.

Appellant contends that the search was the fruit of an illegal arrest. This contention falls in that it assumes the arrest was illegal. Such is not the case. An arrest is legal even though the officer does not have the warrant in his possession at the time of his arrest. (Pen. Code, § 842; *People* v. *Kraps*, 238 Cal.App.2d 675, 679-680 [48 Cal.Rptr. 89]; *People* v. *Stewart*, 189 Cal.App.2d 176, 179 [10 Cal.Rptr. 879].)

Penal Code section 842 provides that an officer may effect a lawful arrest without the warrant in his possession as long as it is shown to the arrested person if he requests it. There is no evidence that appellant was denied access to the warrant when such request was made. Even if the arrest were illegal, the record is devoid of any evidence which connects the search of the hotel room with the traffic warrant arrest. Neither at the trial nor on appeal has respondent sought to justify the entry as incident to the arrest. The arrest was completely separate from the incident giving rise to the search.

Appellant also urges that the entry by the maid and the subsequent entry by the owner of the hotel constituted illegal entry within the meaning of the Fourth Amendment. Even though a nonpaying guest, he has the right to challenge this entry. (*People* v. *Martin*, 45 Cal.2d 755, 759-761 [290 P.2d 855]; *Jones* v. *United States*, 362 U.S. 257, 265-267 [80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233].) A tenant at a hotel is accorded the constitutional right to be free from illegal searches and seizures. (*Stoner* v. *California*, 376 U.S. 483 [84 S.Ct. 889, 11 L.Ed.2d 856].) But, with admirable prescience it has also been said in *United States* v. *Jeffers*, 342 U.S. 48, 51 [72 S.Ct. 93, 96 L.Ed. 59], that ''The law does not prohibit every entry, without a warrant, into a hotel room. Circumstances might make exceptions and certainly implied or express permission is given to such persons as maids, janitors, or repairmen in the performance of their duties.'' In the instant case the maid's entry into the room precisely fits this language and her entry was proper. Her discovery of the extreme disarray and burnt bedding in the room prompted her to call the owner in accordance with his directions to be alert as to the danger of fire. His entry under these circumstances was also proper. This is not the type of entry which is proscribed by the Fourth Amendment, but is entirely consistent with a rational line of actions pursued by reasonable people in

the ordinary performance of their daily duties while going about their lawful affairs. *People* v. *Fierro,* 236 Cal.App.2d 344 [46 Cal.Rptr. 132], presents a completely different picture from that presented here. There, the hotel agent, acting on his own suspicions, conducted a search for narcotics or narcotics paraphernalia. His purpose was to uncover this type evidence and upon uncovering it he communicated with the police who in effect constituted him their agent to conduct a further search for the identical type of evidence. Here, there is no evidence that the maid even indicated to the owner that she had observed any paraphernalia ordinarily connected with narcotics users, or that she knew that the items in the room were so connected. The owner testified that he didn't pay any attention to the narcotics items until the officers removed them later. He immediately called the police to come and investigate, knowing that the tenant of the room was out of town. Under the circumstances here disclosed, the Fourth Amendment does not require that the evidence in this case necessarily be excluded.

 The burden of proof was on the prosecution to show that the entry was proper since it was not made with a warrant. (*Tompkins* v. *Superior Court,* 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113]; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].) It would be unrealistic to require a maid to remain silent upon finding a room in a hotel in the condition which the room in this case was in. It would be equally unrealistic to require a hotel owner to remain silent upon finding a room torn up, with burnt bedding and papers strewn all over the floor, and it would be just as unrealistic to require police, in the line of their duty, to refuse to enter a hotel room when the owner informed them that he wished them to investigate the possibility of arson or burglary of one of his guest's rooms.

The exclusionary rule initiated in *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], was grounded on the proposition that unreasonable activities by police officers should be curbed. Later California cases refused to exclude evidence secured after consent to the search by an apparently authorized person, if the officers believed in good faith that the consenting person had the authority to do so. (*People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 489]; *People* v. *Caritativo,* 46 Cal.2d 68, 73 [292 P.2d 513].)

The case of *People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721], held that the manager of an apartment house could not

consent to a search and the officers were not entitled to rely on her apparent authority where the manager testified that she did not have authority or permission from the tenant to enter the apartment. *Roberts* does not here apply. One of the main reasons many people live in hotels is to be afforded the convenience of maid service with its attendant daily entry by someone other than the tenant. Here, there is no evidence showing that the officers initiated the entry into the room, nor that they had any knowledge or suspicion of any contraband there before they entered.

*Bielicki* v. *Superior Court,* 57 Cal.2d 602, 608 [21 Cal.Rptr. 552, 371 P.2d 288], requires that there must be something other than reasonable belief in apparent authority to justify the search. But here, the hotel owner called the officers to investigate possible offenses against his property. He was not concerned with searching to find evidence that might be used against appellant or anyone else in connection with the narcotics traffic. *Stoner* v. *California, supra,* 376 U.S., at pages 488-489, does not render the evidence here inadmissible.

■ The "apparent authority" doctrine should not apply where an owner is reasonably in fear for the safety of his property and that of his guests. In such case the owner has actual authority to authorize entry. While we are aware that "subtle distinctions" should not be imported into the law surrounding the constitutional right to be free from unreasonable searches and seizures (see *Jones* v. *United States, supra,* 362 U.S. 257, 266-267), under the facts here disclosed it would appear that the "subtle distinction" is sought to be imported by the appellant who in effect urges that because the circumstances disclosed by the evidence fit together in a neat chain they must therefore be suspect and in fact show that by some method, undisclosed by the evidence before us, the police did in fact have prior knowledge of the presence of narcotics in the hotel room. To adopt this line of reasoning would be to admit that any case based upon strong circumstantial evidence would raise a suspicion that that evidence was somehow manufactured or tainted by police activities. This is a position we cannot and will not adopt under the facts here before us.

■ Appellant seeks to question the sufficiency of the evidence here produced and seems to contend that appellant was not sufficiently identified as the owner of the narcotics here involved. The point is without merit. A reading of the facts supports an inference of the appellant's sole occupancy of the room for the two days immediately preceding the maid's entry into it and certainly supports the inference that he had

dominion and control over the narcotics and paraphernalia found therein. (See *People* v. *Groom,* 60 Cal.2d 694, 696-697 [36 Cal.Rptr. 327, 388 P.2d 359].)

The appellant also contends that evidence relating to the Madera burglary deprived him of a fair trial and that the repeated exclusion of the jury from certain proceedings also prevented a fair trial. The trial court acted well within its discretion in admitting references to the Madera burglary, as admissibility of evidence of other crimes may come in when it is relevant and pertinent. (*People* v. *Henderson,* 60 Cal.2d 482, 494-495 [35 Cal.Rptr. 77, 386 P.2d 677].) The jury was well instructed as to the effect of the evidence of this burglary and no prejudice resulted to the appellant by its admission.

The assertion that the trial was unfair since the jury was excluded from the courtroom seven times throughout the trial is also without merit. Five of these conferences were held outside of the presence of the jury at the request of appellant's skillful and able trial counsel. On one such hearing, a prosecution witness was required to be temporarily withdrawn; at another, certain items found in appellant's room were excluded; one was used on *voir dire* of a prosecution witness relating to matters connected with the Madera burglary which defense counsel did not wish to inquire of in front of the jury. At the one conference requested by the prosecution, the prosecution's offer of two items tending to prove that appellant was connected with the Madera burglary, showing that his possession was knowing and illegal, was denied by the court. The only other time the jury was excused was on the court's own motion when an inquiry was had of a witness as to whether or not he had been drinking before appearing in court. Certainly, the action which resulted from these several conferences in no way prejudiced the appellant but resulted, in nearly all instances, in rulings favorable to appellant and his case. It might be pointed out that in *People* v. *Gorg, supra,* 45 Cal.2d 776, 780-781, it is said that the question of the admissibility of evidence obtained during a search should be determined outside the presence of the jury because of the peculiar nature of the testimony which is necessary to establish legal grounds for the search. On oral argument counsel appointed for appellant on this appeal urged this court to substitute its judgment for the judgment of the trial court because the evidence in the case was almost entirely circumstantial. This is an interesting argument but not one which persuades us that we may depart from the familiar rule

that the determination of facts is within the province of the trial court.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied August 23, 1966, and appellant's petition for a hearing by the Supreme Court was denied September 28, 1966.