**UNITED STATES of America**

v.

**Ivan Wallace BROWN.**

**Crim. A. No. 6928.**

United States District Court
D. New Hampshire.

July 10, 1969.

Louis M. Janelle, U. S. Atty., William H. Barry, Jr., Asst. U. S. Atty., Concord, N. H., for plaintiff.

William H. Kelley, Wadleigh, Starr, Peters, Dunn & Kohls, Manchester, N. H., Daniel F. Featherston, Jr., Boston, Mass., for defendant.

## ORDER AND DECISION ON MOTION TO SUPPRESS

BOWNES, District Judge.

This motion to suppress was heard subsequent to an indictment charging defendant, Ivan Wallace Brown, with violation of Title 18, United States Code, Section 2113(a) and (d). The motion raises the question of whether personal effects of the defendant, two suitcases and an attache case, searched and seized by the F.B.I. without a search warrant can be used in evidence at the trial.

I rule that they cannot because the search and seizure was unlawful.

Although no search warrant had issued, the government contends that the search and seizure of the defendant's personal effects was lawful because it was made by and with the consent of the person in lawful possession of the premises where the suitcases and attache case were found. This raises the issue of the defendant's standing to contest the search and seizure in addition to the issue of the lawfulness of that search and seizure.

### THE FACTS

The search and seizure took place on Friday, February 14, 1969. The premise searched was the apartment of a Mrs. Riffenburg at 20 Mt. Bowdoin Terrace in Dorchester, Massachusetts. Mrs. Riffenburg leased the apartment and occupied it along with her four children and Mr. Riffenburg. At the time, Mr. and Mrs. Riffenburg were not married and the apartment was leased to her in the name of LaVache. The articles seized were two suitcases and an attache case belonging to the defendant.

For purposes of this case, the defendant is best described as a friend of the Riffenburgs, particularly Mr. Riffenburg. He was not a boarder at the apartment of Mrs. Riffenburg and had no interest in her apartment except as a visitor. The defendant had slept at the apartment on three nights prior to the search and seizure: January 28th, February 10th, and February 11th, 1969.

On each occasion, he slept in one of the children's beds.

On February 5, 1969, an arrest warrant was validly issued for the defendant on the grounds that he was a fugitive felon in the possession of a revolver.

On February 13, 1969, the Second National Bank of Nashua, New Hampshire, was robbed and the defendant became the F.B.I.'s only suspect after they had interviewed the defendant's sister-in-law in Nashua. This interview led the F.B.I. to the apartment of Mrs. Riffenburg as a place where the defendant might be located.

On Thursday evening, February 13th, the day prior to the search and seizure, the defendant came to the apartment and left his suitcases and the attache case. The suitcases were placed in Mrs. Riffenburg's bedroom; the attache case was put in the rear of a hall closet by the defendant. The defendant, the Riffenburgs, and the defendant's girl friend then went "out on the town" and the defendant subsequently spent the night with his girl friend.

On February 14, 1969, at approximately 12:30 P.M., two F.B.I. agents from the Fugitive Squad arrived at the apartment for the purpose of arresting the defendant pursuant to the fugitive felon arrest warrant. At about the same time that the first two agents were arriving at the apartment in Dorchester, a bank robbery arrest warrant for the defendant was being issued by the United States Commissioner for New Hampshire.

The agents approached the apartment with drawn revolvers and told Mrs. Riffenburg that they were looking for the defendant. She gave them permission to enter the apartment and to search it. Mr. Riffenburg, who was also there at the time, told one of the agents that, in addition to the suitcases in the bedroom, there was an attache case in the closet belonging to the defendant and, further, he informed one agent that the case contained a gun and some money, as he had seen the defendant open the case on the prior evening.

In addition to the two agents from the F.B.I. Fugitive Squad, four other agents of the F.B.I. also arrived at the apartment or adjacent to it shortly after 12:30 P.M.

At about 3:00 P.M., Mrs. Riffenburg received a telephone call from the defendant; one of the agents monitored that call on another phone in the apartment. The defendant told Mrs. Riffenburg, among other things, that he was coming to the apartment about 5:30 that afternoon.

Shortly after the F.B.I. found the attache case, it was forced open and a gun and approximately fourteen thousand dollars in cash was found in it. It is not clear to the Court whether the attache case was opened before or after the phone call from the defendant, but it is clear that prior to the time that it was opened at least one of the F.B.I. agents had been informed that there was a gun and money in it and it was opened an appreciable time before the defendant was arrested.

The defendant was arrested about 6:00 P.M. on his way to the apartment.

## RULINGS OF LAW

A. *Defendant's Standing to Contest the Seizure.*

■ The personal effects of Ivan Wallace Brown in the form of two suitcases and an attache case were searched and seized without a search warrant in the apartment of a friend where they had been left with permission. Although the defendant had no interest in the premises or lawful right to prevent entry, this does not strip him of his right to be secure in his effects against unreasonable searches and seizures. The defendant is the person aggrieved by the search and seizure, the one against whom the search was directed and he is entitled to have the merits of his motion to suppress determined. Stoner v. California, 376 U.S. 483, 84 S. Ct. 889, 11 L.Ed.2d 856 (1964); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Jeffers, 342 U.S. 48, 72 S.Ct.

93, 96 L.Ed. 59 (1951). See also United States v. Small, 297 F.Supp. 582 (D. Mass.1969).

■ Even if Mrs. Riffenburg "clearly and unambiguously consented to the search of the apartment," (a matter which is not without some question) the law is now so firmly established as to warrant no citation that a limited consent cannot be vicariously extended to the opening of another person's locked attache case. See Stoner v. California, 376 U.S. at 489, 84 S.Ct. 889.

There is no claim by the government, nor could there be on the facts, that the defendant had relinquished his ownership in the suitcases and attache case.

■ The Court rules that the facts of this case compel the conclusion that the contents of the defendant's suitcases and luggage are constitutionally protected effects, the seizure of which is entitled to a determination as to whether or not the search and seizure itself was lawful.

B. *The Lawfulness of the Seizure.*

■ Since no search warrant had issued, the government must justify its failure to obtain one. All searches without a valid warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. Stoner v. California, *supra*; Niro v. United States, 388 F.2d 535 (1st Cir. 1968).

■ It is the government's position that this was a reasonable search and seizure despite the lack of a search warrant. It does not seek to base its argument on the exception that the search and seizure were "incident to a lawful arrest." It seeks rather to justify the failure to obtain a search warrant on the ground that an individual, in this case Mrs. Riffenburg, having possession of the personal property of another, may consent to its search and seizure so long as the person whose property was seized had no superior legal right of possession or control over the premises in which the search and seizure were made.

This position is rejected on the authority of Stoner v. California, *supra*;

Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); Jones v. United States, *supra*; United States v. Jeffers, *supra*; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); and Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

Since there was no real urgency, a point emphasized in the First Circuit's 1968 *Niro* decision, *supra*, the search and seizure were unreasonable on at least three grounds. First, a warrant could have been obtained without running any risk of the defendant's escape during the process of obtaining the warrant. There were at least six F.B.I. agents available at all times and telephone and radio communication were immediately accessible to them.

Second, the seizure of the attache case and the suitcases was not necessary to forestall an attack on the agents by the defendant. One of the reasons why the police are allowed to make a search incident to an arrest without a warrant is to effectively disarm the suspect and minimize the danger to themselves. No such precaution was necessary under these facts.

Third, the process of obtaining a warrant would not have given anyone an opportunity to destroy the evidence. This is certainly not a case where delay or absence from the scene by the police makes it possible for the suspected criminal to destroy the fruits of the crime.

The recent United States Supreme Court case of Chimel v. California, 89 S.Ct. 2034, contains not only a comprehensive analysis of the development of the law relative to searches and seizures, but also a lucid explanation of the importance to all citizens of the Fourth Amendment prohibition against illegal searches and seizures.

In view of the timeliness of the *Chimel* decision, I feel that no further citation or commentary is warranted.

The motion to suppress is granted. So ordered.