[Crim. No. 9720. First Dist., Div. One. Oct. 21, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE A. BAKER, Defendant and Appellant.

## COUNSEL

Neal L. Petersen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and John F. Henning, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—Defendant has appealed from a judgment convicting him of possessing a restricted dangerous drug in violation of section 11911 of the Health and Safety Code, and of possessing a concealable weapon after having suffered a prior felony conviction, in violation of section 12021 of the Penal Code. He was sentenced to state prison on the second charge, and to the county jail for one year on the first, the latter sentence to run concur-

rently with the former, and both sentences to run concurrently with a then existing state prison sentence from another county which the defendant was then serving. The convictions followed defendant's pleas of guilty which were entered after the denial of his motion to suppress evidence as to both counts. The appeal is authorized by subdivision (m) of section 1538.5.

Defendant contends that his constitutional rights were violated by the search and seizure and introduction into evidence of the contents of a locker at a bowling alley, and that his subsequent arrest and the search of his person was not warranted. It is concluded that police observation of the contents of a handbag stored in the locker after they had been requested to examine its contents by the manager of the bowling alley who had observed a weapon and what was believed to be packets of contraband in the handbag, and the seizure of the weapon were reasonable under the circumstances; and that in any event, if improper, those actions did not taint the subsequent frisk, discovery of a second weapon, arrest, and further search of the defendant which resulted in the disclosure of further packets of contraband, and the seizure of what had theretofore been observed.

The motion to suppress was submitted on the record of the preliminary examination which consists solely of the testimony of the arresting officer.

Over the objection of the defendant, the officer was permitted to testify that the manager of the bowling alley had told him that an attendant at the bowling alley had observed a party who placed packets of white powder and a gun in a handbag in a locker at that bowling alley. The manager told the officer that the suspect had been described as a white male in his thirties.

The manager advised the officer that he had a key to the locker; that he had seen the contents of the locker; and that it did contain packets of white powder and a gun in a handbag. From the officer's testimony it appears that this information was communicated to the Ingleside police station, that two plainclothes officers were sent to investigate and stake out the bowling alley, that the contents of the locker were viewed by those officers, and that later they told the testifying officer what they had seen.

The witness, a member of the Narcotic Bureau of the San Francisco Police Department, was requested to go to the scene by a captain of the Ingleside police station who imparted some of the foregoing information to him. On his arrival at the bowling alley, several hours after the other officers, they told him that they had seen a gun, white powder, and some other things in the locker. The manager gave him similar information, and the witness asked him to confirm it. The manager opened the locker and brought out the bag. The testifying officer opened it in the manager's office and ascertained that it contained an Ally standard model .22 calibre long pistol, seven plastic

bags containing a white powder, which subsequently proved to be desoxy-ephedrine, a restricted dangerous drug, and miscellaneous papers, hunting knives, a cartridge container, various spoons, needles and syringes, and a whetting stone.

The officer requested the manager's cooperation, and the contents, minus the gun, were placed back in the locker. The locker was not coin operated like those available to the public at a bus station, but was of a type common to bowling alleys for the storage of a bowler's bowling ball and sports equipment. The testifying officer and the two plainclothesmen commenced a stake-out which culminated about one-half an hour later when the defendant opened the suspected locker with a key, removed the handbag, closed the locker and started to walk out.

The witness told the defendant, "Hold it, police officers. You are under arrest." The defendant made a motion to his waistline. He was stopped and the officer advised the defendant of his constitutional rights and searched him for weapons. This search revealed an unloaded Colt pistol concealed in the defendant's waistband, and, in his shirt pocket, two packets, one of which was larger than the other, containing a white powder which proved to be the same restricted dangerous drug as was found in the packets in the handbag.

The record does not indicate whether the charges of which the defendant was convicted by his pleas of guilty were predicated upon his possession of the dangerous drugs and weapon which had been observed in the handbag which he subsequently removed from the locker, or upon the possession of similar articles found upon his person at the time of his arrest.[1] Although separate considerations may govern the officer's actions with respect to the two sources of contraband, the interrelationship of those actions under the particular facts of this case renders all the articles admissible and it is unnecessary to further dissect the basis of the conviction.

---

[1]Each count in the information is couched in general terms (see Pen. Code, § 952), and, in the absence of a demurrer, the defendant has waived all objections to the sufficiency of the pleading (Pen. Code, § 1012). The defendant orally interposed his motion to suppress evidence under the provisions of section 1538.5 of the Penal Code, and it was submitted on the transcript of this preliminary examination, together with the exhibits which were offered into evidence at the earlier hearing. These included the handbag and its general contents, the pistol, which was removed from the handbag, the plastic bags and powder originally observed in the handbag, and the pistol and packets removed from the defendant's person. All had been admitted subject to defendant's objection predicated upon illegal search and seizure. This objection was overruled by the magistrate in holding the defendant to answer.

## I

■ The protection against unreasonable searches and seizures which is afforded the defendant by the Fourth Amendment of the United States Constitution extended to the locker which he rented. (See, *United States* v. *Small* (D.Mass. 1969) 297 F.Supp. 582, 584-585. Cf. *People* v. *Shepard* (1963) 212 Cal.App.2d 697, 700-701 [28 Cal.Rptr. 297].) This protection also covered the handbag which he stored in that locker. (See, *United States* v. *Brown* (D.N.H. 1969) 300 F.Supp. 1285, 1288; *People* v. *McGrew* (1969) 1 Cal.3d 404, 409 [82 Cal.Rptr. 473, 462 P.2d 1]; *Abt* v. *Superior Court* (1969) 1 Cal.3d 418, 420 [82 Cal.Rptr. 481, 462 P.2d 10]; *People* v. *Cruz* (1964) 61 Cal.2d 861, 866-867 [40 Cal.Rptr. 841, 395 P.2d 889]; and *People* v. *Egan* (1967) 250 Cal.App.2d 433, 436 [58 Cal.Rptr. 627].)

The test is whether ". . . the Government's activities . . . violated the privacy upon which he justifiably relied" while using the locker. (See, *Katz* v. *United States* (1967) 389 U.S. 347, 353 [19 L.Ed.2d 576, 583, 88 S.Ct. 507]; *Corngold* v. *United States* (9th Cir. 1966) 367 F.2d 1, 7; *United States* v. *Small, supra,* 297 F.Supp. 582, 584-585; *People* v. *McGrew, supra,* 1 Cal.3d 404, 409-410 and 412; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1103-1106 [80 Cal.Rptr. 633, 458 P.2d 713]; *People* v. *Marshall* (1968) 69 Cal.2d 51, 58-59 [69 Cal.Rptr. 585, 442 P.2d 665]; *Kirby* v. *Superior Court* (1970) 8 Cal.App.3d 591, 595 [87 Cal.Rptr. 577]; *Swan* v. *Superior Court* (1970) 8 Cal.App.3d 392, 396 [87 Cal.Rptr. 280]; *People* v. *Superior Court* (1969) 275 Cal.App.2d 489, 494 [79 Cal.Rptr. 904].)

## II

■ "What a person knowingly exposes to the public, . . . is not a subject of Fourth Amendment protection. [Citations.]" (*Katz* v. *United States, supra,* 389 U.S. 347, 351 [19 L.Ed.2d 576, 582]. See also, *Ker* v. *California* (1963) 374 U.S. 23, 43 [10 L.Ed.2d 726, 743, 83 S.Ct. 1623]; *People* v. *Superior Court* (1970) 3 Cal.App.3d 648, 658 [83 Cal.Rptr. 732]; and *People* v. *Plane* (1969) 274 Cal.App.2d 1, 4 [78 Cal.Rptr. 528].)

Evidence, albeit hearsay, was produced to show that the gun and the packets of powder had been exposed outside of the handbag and locker to the view of an employee of the bowling alley. It is unnecessary to consider the propriety of the court's ruling in sustaining the objection of the defendant to this evidence on the issue of probable cause (it was hearsay once removed and of questionable competency), because the officer was entitled to rely upon the manager's observation from the latter's personal search. It is immaterial whether the manager had probable cause to examine the locker and the

contents of the handbag stored in it. ■ The protection against unlawful searches and seizures applies to governmental action and does not prevent the use as evidence of that which was observed or taken as the result of a search or seizure by a private citizen without governmental complicity. (See, *Burdeau* v. *McDowell* (1921) 256 U.S. 465, 475 [65 L.Ed. 1048, 1050, 41 S.Ct. 574, 13 A.L.R. 1159]; *Wolf Low* v. *United States* (9th Cir. 1968) 391 F.2d 61, 63; *Gold* v. *United States* (9th Cir. 1967) 378 F.2d 588, 590-591; *United States* v. *Small, supra,* 297 F.Supp. 582, 585; *People* v. *Superior Court* (1969) 70 Cal.2d 123, 128-129 [74 Cal.Rptr. 294, 449 P.2d 230]; *People* v. *Superior Court, supra,* 3 Cal.App.3d 648, 659-660; *In re Donaldson* (1969) 269 Cal.App.2d 509, 510 [75 Cal.Rptr. 220]; *People* v. *Cheatham* (1968) 263 Cal.App.2d 458, 461 [69 Cal.Rptr. 679]; *People* v. *Katzman* (1968) 258 Cal.App.2d 777, 786 [66 Cal.Rptr. 319]; *People* v. *Botts* (1967) 250 Cal.App.2d 478, 481-483 [58 Cal.Rptr. 412]; *People* v. *Potter* (1966) 240 Cal.App.2d 621, 630 [49 Cal.Rptr. 892]; *People* v. *Fierro* (1965) 236 Cal.App.2d 344, 347 [46 Cal.Rptr. 132]; and *People* v. *Randazzo* (1963) 220 Cal.App.2d 768, 769-777 [34 Cal.Rptr. 65].)

## III

■ Once the police were apprised of the manager's suspicions, the public interest in effective crime prevention and detection authorized, if it did not compel, further investigation. It is axiomatic "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 22 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868]. See also, *United States* v. *Van Leeuwen* (1970) 397 U.S. 249, 252-253 [25 L.Ed.2d 282, 285-286, 90 S.Ct. 1029]; *People* v. *Mickelson* (1963) 59 Cal.2d 448, 450-451 [30 Cal. Rptr. 18, 380 P.2d 658]; *People* v. *Barrett* (1969) 2 Cal.App.3d 142, 149 [82 Cal.Rptr. 424]; *People* v. *Plane, supra,* 274 Cal.App.2d 1, 5-6; *Pollock* v. *Superior Court* (1969) 272 Cal.App.2d 548, 554 [77 Cal.Rptr. 565]; *People* v. *Fry* (1969) 271 Cal.App.2d 350, 354 [76 Cal.Rptr. 718]; *People* v. *Rightnour* (1966) 243 Cal.App.2d 663, 669-670 [52 Cal.Rptr. 654]; *People* v. *Machel* (1965) 234 Cal.App.2d 37, 43-46 [44 Cal.Rptr. 126]; *People* v. *Burke* (1962) 208 Cal.App.2d 149, 161 [24 Cal.Rptr. 912]; *People* v. *Cove* (1964) 228 Cal.App.2d 466, 469 [39 Cal.Rptr. 535]. Cf., however, *People* v. *Hunt* (1967) 250 Cal.App.2d 311, 314-315 [58 Cal. Rptr. 385].)

■ When the facts communicated to law enforcement authorities give rise to a suspicion that containers contain contraband, such containers, although they may not be searched without a warrant, may be detained while an investigation is made and a search warrant secured. (See *United States* v.

*Van Leeuwen, supra,* 397 U.S. 249, 252-253 [25 L.Ed.2d 282, 285-286]; *Corngold* v. *United States, supra,* 367 F.2d 1, 8; *United States* v. *Brown, supra,* 300 F.Supp. 1285, 1288; *United States* v. *Small, supra,* 297 F.Supp. 582, 585-586; and *Gold* v. *United States, supra,* 378 F.2d 588, 590.)

In *Small* the court noted, although it did not expressly countenance, that a lock on a rented locker had been changed to prevent entry by the renter of the locker, and that there was therefore ample opportunity to get a search warrant. (297 F.Supp. at pp. 585-586.) In *People* v. *Marshall, supra,* the court approved the suggestion that a period of watching will prevent the destruction, removal or concealment of property which cannot be discovered or seized without a warrant. (See, 69 Cal.2d at p. 61. See also, *People* v. *Egan, supra,* 250 Cal.App.2d 433, 437.)

In *People* v. *Kampmann* (1968) 258 Cal.App.2d 529 [65 Cal.Rptr. 798], the court observed, "Where a lawful entry has occurred the seizure of contraband observed in plain sight is not unreasonable; on the contrary, it is the lawful duty of the police officer. To require in the present case that one officer go to obtain a warrant while the other remains camped by the marijuana would further no recognizable interest; it would magnify technicality at the expense of reason." (258 Cal.App.2d at p. 533.) When the contraband is concealed subject to constitutional protection and safe from search or seizure, the plain-sight rule cannot apply. Nevertheless the officer should have the alternative of waiting for the return of the suspected owner.

## IV

In this case the officers did not merely watch and wait. It appears that the first officers on the scene viewed the contents of the handbag. The circumstances under which this view was taken, i.e., at their request, or by volunteered exhibition by an employee of the bowling alley, do not appear in the record. It does appear, however, that the testifying officer requested the manager to confirm the information which he had volunteered by opening the locker and removing the handbag for inspection. ■ It is established "that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (*Katz* v. *United States, supra,* 389 U.S. 347, 357 [19 L.Ed.2d 576, 585]. See also, *Stoner* v. *California* (1964) 376 U.S. 483, 486 [11 L.Ed. 2d 856, 858, 84 S.Ct. 889].)

■ The burden of proof is on the prosecution to justify the testifying officer's original warrantless search of the locker and handbag, and the seizure of the pistol. (*Abt* v. *Superior Court, supra,* 1 Cal.3d 418, 420; *People* v. *Kanos* (1969) 70 Cal.2d 381, 384 [74 Cal.Rptr. 902, 450 P.2d 278];

*People* v. *Marshall, supra,* 69 Cal.2d 51, 56; *People* v. *Barrett, supra,* 2 Cal.App.3d 142, 146; *People* v. *Waller* (1968) 260 Cal.App.2d 131, 137 [67 Cal.Rptr. 8]; *People* v. *Rightnour, supra,* 243 Cal.App.2d 663, 669.)

— A —

■ The officers could not rely upon the consent of the manager of the bowling alley as authorizing the search of the locker or the handbag. (See, *Stoner* v. *California, supra,* 376 U.S. 483, 488-490 [11 L.Ed.2d 856, 860-861]; *Chapman* v. *United States* (1961) 365 U.S. 610, 616-618 [5 L.Ed.2d 828, 833-834, 81 S.Ct. 776]; *Corngold* v. *United States, supra,* 367 F.2d 1, 6-7; *United States* v. *Brown, supra,* 300 F.Supp. 1285, 1288; *United States* v. *Small, supra,* 297 F.Supp. 582, 586; *People* v. *McGrew, supra,* 1 Cal.3d 404, 412-413; and *People* v. *Burke, supra,* 208 Cal.App.2d 149, 159-160. Cf. *Frazier* v. *Cupp* (1969) 394 U.S. 731, 740 [22 L.Ed.2d 684, 693-694, 89 S.Ct. 1420]; *Wolf Low* v. *United States, supra,* 391 F.2d 61, 63; *Gold* v. *United States, supra,* 378 F.2d 588, 591; *People* v. *Hill* (1968) 69 Cal.2d 550, 554-555 [72 Cal.Rptr. 641]; *People* v. *Superior Court, supra,* 3 Cal. App.3d 648, 654-658; and *People* v. *Shepard, supra,* 212 Cal.App.2d 697, 701.)

— B —

■ Nor can the prosecution justify their original search of the locker and handbag as attendant to the subsequent arrest of the defendant. A search may be justified as incident to a lawful arrest "only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. [Citation.]" (*Stoner* v. *California, supra,* 376 U.S. 483, 486.) ■ A search may precede the actual arrest when probable cause already exists for the arrest and the defendant is present. (See, *Ker* v. *California, supra,* 374 U.S. 23, 42-43 [10 L.Ed.2d 726, 743]; and *People* v. *Love* (1970) 8 Cal.App.3d 23, 30 [87 Cal.Rptr. 123].) Nevertheless, when as here, the suspect is not present (in fact he was not specifically identified), and it is not known when, if ever he will return, the search cannot be said to be contemporaneous with an arrest which subsequently eventuated. (*People* v. *McGrew, supra,* 1 Cal.3d 404, 410; *Abt* v. *Superior Court, supra,* 1 Cal. 3d 418, 421; *People* v. *Marshall, supra,* 69 Cal.2d 51, 61; *People* v. *Egan, supra,* 250 Cal.App.2d 433, 437. Cf. *People* v. *Love, supra,* 8 Cal.App.3d 23, 30; and *People* v. *Dillard* (1959) 168 Cal.App.2d 158, 163-165 [335 P.2d 702].)

— C —

■ Probable cause to believe a locker or handbag contains contraband does not alone justify a search without a warrant. (*Corngold* v. *United States, supra,* 367 F.2d 1, 3; *People* v. *McGrew, supra,* 1 Cal.3d 404, 409; *Abt* v. *Superior Court, supra,* 1 Cal.3d 418, 421; *People* v. *Marshall, supra,* 69 Cal.2d 51, 58; *Swan* v. *Superior Court, supra,* 8 Cal.App.3d 392, 397; *People* v. *Fry, supra,* 271 Cal.App.2d 350, 357; *People* v. *Burke, supra,* 208 Cal.App.2d 149, 161.)

— D —

A closer question is presented by the theory that the manager of the bowling alley, having independently discovered the suspicious articles (see II above) could exhibit them to the police for the purpose of preventing his premises from being used for the illegal storage of contraband. ■ It is clear that the fruits of a private search conducted at the instigation of, or with the participation of, the police will be deemed subject to the prohibition of the Fourth Amendment. (See, *Corngold* v. *United States, supra,* 367 F.2d 1, 5-6; *People* v. *McGrew, supra,* 1 Cal.3d 404, 409; *Stapleton* v. *Superior Court* (1968) 70 Cal.2d 97, 100-103 [73 Cal.Rptr. 575, 447 P.2d 967]; *People* v. *Evans* (1966) 240 Cal.App.2d 291, 299-302; and *People* v. *Fierro, supra,* 236 Cal.App.2d 344, 347.)

In the Ninth Circuit, despite a division of opinion among the judges of the United States Court of Appeals, a distinction has been drawn between a search and seizure which is initially instigated by or participated in by law enforcement agents, and a search or examination of that which has been discovered by a carrier on its own initiative. (Cf. *Corngold* v. *United States, supra,* 367 F.2d 1, 4-6; and *United States* v. *Wilson* (9th Cir. 1968) 392 F.2d 979, with *Clayton* v. *United States* (9th Cir. 1969) 413 F.2d 297, 298; *Wolf Low* v. *United States, supra,* 391 F.2d 61, 63; and *Gold* v. *United States, supra,* 378 F.2d 588, 591.)

In this state, however, the decisions imply that the owner of property or facilities has no such interest in determining whether his property or facilities are being used for illegal purposes as to authorize consent to inspection of rooms, lockers, or packages which contain suspected contraband he has discovered on his own initiative. (See, *People* v. *McGrew, supra,* 1 Cal.3d 404, 413, and *People* v. *Fierro, supra,* 236 Cal.App.2d 344, 347.)[2] ■ If the owner's suspicions are aroused by the observations of an employee or his own

---

[2]In *People* v. *Gordon* (1970) 10 Cal.App.3d 454 [89 Cal.Rptr. 214], however, the court upheld an official search which followed discovery of the odor of marijuana by an agent of the carrier and confirmation of the odor by the officer who had been

personal observations, he cannot rely upon the public law enforcement authorities to observe and confirm or deny those suspicions, unless the facts upon which they are predicated amount to probable cause for the issuance of a search warrant. He, of course, can hire his own expert to determine whether a suspected substance discovered on his premises is in fact contraband.

No real purpose is served by precluding police examination of what has already been discovered. A distinction between material seized by the private searcher, and material restored to concealment in a place over which he has dominion and control has no rational justification. The owner's privacy has already been invaded. A rational distinction can be made between the prying landlord, or bailee, whose discoveries perhaps should be outlawed in the same manner as those of the prying police or of the landlord or bailee acting at the instigation of the police, and the landlord or bailee who innocently discovers the suspicious circumstances, and seeks expert advice as to the nature of the use to which his premises or facilities are being appropriated. The latter would be no more than an extension of the plain-sight rule, by augmenting the observations of the layman with the expertise of the police.

---

summoned to investigate. The court concluded, "Under the circumstances we are of the opinion that an emergency situation existed in which there was no time to obtain a search warrant since the trunk and footlocker were in the process of being removed from the jursdiction and the officers had reasonable cause to believe defendant too planned an immediate departure." (10 Cal.App.3d at p. 460. See also, *People* v. *Plane* (1969) 274 Cal.App.2d 1, 5-6 [78 Cal.Rptr. 528]; and *People* v. *Barcenas* (1967) 251 Cal.App.2d 405, 407 [59 Cal.Rptr. 419].)

In *Vandenberg* v. *Superior Court* (1970) 8 Cal.App.3d 1048 [87 Cal.Rptr. 876], the court stated, "Permitting an officer to search a bedroom in order to determine if his son is using or trafficking in narcotics appears to us to be a reasonable and necessary extension of a father's authority and control over his children's moral training, health and personal hygiene." (8 Cal.App.3d at p. 1055. See also, *In re Donaldson* (1969) 269 Cal.App.2d 509, 511-513 [75 Cal.Rptr. 220].)

In *People* v. *Rightnour* (1966) 243 Cal.App.2d 663 [52 Cal.Rptr. 654], the court stated, ". . . it would be . . . unrealistic to require police, in the line of their duty, to refuse to enter a hotel room when the owner informed them that he wished them to investigate the possibility of arson or burglary of one of his guest's rooms." (243 Cal.App.2d at p. 669.)

In *Krauss* v. *Superior Court* *(Cal.App.) 88 Cal.Rptr. 612, 617, the court pointed out "that to permit police officers to search illegally in order to 'check' and confirm information which they have received, which information would itself support a search warrant, would open the door to unrestricted police searches." (88 Cal.Rptr. at p. 617.) In that case a maid had been trained to recognize marijuana, and the discovery was made by her examination of the apparently empty cigarette package. It would appear, therefore, that the original search may be suspect, first, as police inspired, and, secondly, as unwarranted invasion of the occupant's privacy.

*Hearing in Supreme Court granted on petition of People, October 15, 1970, Sac. 7878.

Nevertheless, in view of *McGrew,* and other decisions, it is concluded that the search cannot, as suggested, be predicated upon an extension of the plain-sight rule, or as a warranted inquiry and investigation under the auspices of the owner of the premises.

— E —

In *Terry* v. *Ohio, supra,* 392 U.S. 1, the court dealt with the question "whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons unless there is probable cause for an arrest." (392 U.S. at p. 15 [20 L.Ed.2d at p. 902].) The opinion answered this question, as follows: "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and *to neutralize the threat of physical harm.*" (*Id.,* at p. 24 [20 L. Ed.2d at p. 908], italics added. See also, *Warden* v. *Hayden* (1967) 387 U.S. 294, 299 [18 L.Ed.2d 782, 789, 87 S.Ct. 1642]; and *People* v. *Mickelson, supra,* 59 Cal.2d 448, 450.)

Given the information that there was a gun in the handbag in the locker, was it unreasonable for the officer to remove the gun from a place where it might be available to the suspect? If it be assumed that the police were otherwise willing to accept either of the alternatives of attempting to get a search warrant on the basis of the information received from the employees of the bowling alley or of merely awaiting the return of the defendant, need they leave the weapon in the handbag in the locker in the meantime? The defendant contends that there were no exigent circumstances which warranted a search and seizure of the weapon described by the manager of the bowling alley because it was not shown that the gun was loaded, and because the gun was safely in the locker under the ever watchful eyes of the police. This position is supported by *United States* v. *Brown, supra,* 300 F.Supp. 1285, where officers armed with an arrest warrant were advised that an attache case left in the host-informer's house by the guest-fugitive contained a gun. The court ruled, "One of the reasons why the police are allowed to make a search incident to an arrest without a warrant is to effectively disarm the suspect and minimize the danger to themselves. No such precaution was necessary under these facts." (300 F.Supp. at p. 1288. Cf. facts in *Kirby* v. *Superior Court, supra,* 8 Cal.App.3d 591, 594; and *People* v. *Cove, supra,* 288 Cal.App.2d 466, 471.) The defendant was apparently identifiable, and was in fact arrested on his way back to his host's apartment.

In *Irwin* v. *Superior Court* (1969) 1 Cal.3d 423 [82 Cal.Rptr. 484, 462 P.2d 12], the court stated, ". . . the search of a suspect's belongings where that person has no access to any weapons that might be concealed in such belongings is . . . unlawful. (*People* v. *Mickelson, supra,* 59 Cal.2d 448, 454.)" (1 Cal.3d at p. 428.) In neither *Irwin* nor *Mickelson* did the police have reliable information that a weapon was concealed in the place searched. Moreover, in neither case was the identity of the suspect unknown, and undiscoverable until, as here, he committed himself by exercising his dominion over the container in which the weapon was reportedly concealed.

In *People* v. *Egan, supra,* 250 Cal.App.2d 433, the illegally searched handbag turned out to contain a gun which served as the basis of a charge, as in this case, of possession of a concealable weapon by a convicted felon in violation of section 12021 of the Penal Code. In that case, however, there was no reliable information concerning the contents of the bag at the time it was first observed, and the identity of the owner, for whom there existed probable cause for arrest, was known.

In this case it could not be determined whether the gun was loaded or unloaded without inspection. There is not and should not be any presumption that a gun is unloaded. In fact common sense and well established safety rules require that the opposite conclusion be assumed. It is true that the officers could conduct themselves so as to prevent the suspect from reaching his gun. Nevertheless, there is many a slip between the thought and the deed. It should be noted that the identification of the suspect depended on his committing himself to the right to possession of the locker and its contents. It is conceivable that upon being then accosted, whether for interrogation or because of probable cause for arrest, that he would attempt to resist and seek to extract the weapon from his handbag.[3] The police would then be justified in using such force as was warranted by the knowledge they had—that there was a weapon in the bag—to meet this resistance, with consequent ill effects for the suspect. On the other hand, if he were successful in his resistance it would be small consolation to the widow of a slain policeman for some judge to say that her husband or his associates had time to apply for a search warrant. ■ It was not unreasonable for the officer to search for and remove the weapon from the handbag under the circumstances of this case.

This is not to say that the rule noted above, which prevents a search with-

---

[3]The People in fact contend that defendant's motion to his waistline where a second weapon was concealed when he was apprehended constituted resistance to arrest which subjected him to the further charge of resisting arrest. (See, Pen. Code, § § 148 and 834a; and *Pittman* v. *Superior Court* (1967) 256 Cal.App.2d 795, 797 [64 Cal.Rptr. 473].) Since there was other probable cause to arrest (part V, below) it is unnecessary to pursue this theory.

out a warrant merely because there is probable cause to search, may be violated with impunity. It is only when, as in this case, the officer has probable cause to investigate and is reliably informed of a hazard to his safety that he may neutralize and minimize the danger which might otherwise attend the investigation. *Terry* permits no less.

## V

When the suspect appeared on the scene and identified himself by exercising dominion over the locker and its contents, the officers had the right, which would accompany any lawful detention, whether for investigation or formal arrest, to stop and frisk him for weapons. (*Terry* v. *Ohio, supra,* 392 U.S. 1, 24-27 [20 L.Ed.2d 889, 907-909]; and see cases part III above.) Even if it is concluded that the untainted information received from the manager, as predicated upon his personal observation, did not furnish probable cause for arrest, it unquestionably furnished probable cause for investigation and interrogation. The discovery of the concealed weapon in the suspect's waistband then furnished probable cause, if none existed before, for his arrest and further search, including a search of the handbag which was then immediately accessible to him. (See, *Terry* v. *Ohio, supra,* 392 U.S. 1, 30-31 [20 L.Ed.2d 889, 911]; *People* v. *Mickelson, supra,* 59 Cal.2d 448, 450-451; *Ker* v. *California, supra,* 374 U.S. 23, 41 [10 L.Ed.2d 726, 742]; *People* v. *Fry, supra,* 271 Cal.App.2d 350, 355; *People* v. *Burke, supra,* 208 Cal.App.2d 149, 158.)

The officers were entitled to rely on the information, such as it was (see discussion below), received from the manager. He was a citizen informant, in the nature of a victim or complainant, whose information could be taken at face value irrespective of other evidence concerning his reliability. (See, *People* v. *Hogan* (1969) 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1105 [80 Cal.Rptr. 633, 458 P.2d 713]; *People* v. *Guidry* (1968) 262 Cal.App.2d 495, 497-498 [68 Cal.Rptr. 794]; *People* v. *Bevins* (1970) 6 Cal.App.3d 421, 425 [85 Cal.Rptr. 876]; *People* v. *Barrett, supra,* 2 Cal.App.3d 142, 147; *Pollock* v. *Superior Court, supra,* 272 Cal.App.2d 548, 552; *People* v. *Waller, supra,* 260 Cal.App.2d 131, 137; *People* v. *Barcenas, supra,* 251 Cal.App.2d 405, 407-408; *People* v. *Griffin* (1967) 250 Cal.App.2d 545, 550-551 [58 Cal. Rptr. 707]; *People* v. *Lewis* (1966) 240 Cal.App.2d 546, 550-551 [49 Cal. Rptr. 579].)

It is questionable, however, that the information transmitted constituted probable cause for arrest. In *People* v. *McGrew, supra,* the court ruled that a report from an airline's freight agent that a footlocker contained several

bricks or small packages wrapped in brown paper or newspaper, and the discovery of another footlocker shipped by the same shipper at another airline, from which the odor of marijuana emanated, did not furnish probable cause to arrest the shipper for possession of marijuana. (1 Cal.3d at pp. 413-414. See also, *Abt* v. *Superior Court, supra,* 1 Cal.3d 418, 421; and *People* v. *Marshall, supra,* 69 Cal.2d 51, 56-59. Cf. *People* v. *Bianez* (1968) 259 Cal. App.2d 76, 79 [66 Cal.Rptr. 124]; *People* v. *Brooks* (1965) 234 Cal.App. 2d 662, 685 [44 Cal.Rptr. 661]; *People* v. *Williams* (1963) 218 Cal.App.2d 86, 91 [32 Cal.Rptr. 277]; and *People* v. *Tahtinen* (1962) 210 Cal.App.2d 755, 757 [26 Cal.Rptr. 864].)

In *Abt* the court ruled, "The probability that a carton of brick-shaped tin-foil-wrapped packages will contain marijuana is not sufficient to justify a search without a warrant." (1 Cal.3d at p. 421.)

From the foregoing it may be assumed that an appellate court should not consider the expertise of the viewing officer, even, as in *Abt* after he has been told by an experienced beholder that he saw contraband within the package. When the nature of the package observed approaches a matter of common understanding, the rejection of the probability that it is contraband appears to the layman to evince a lack of common sense on the part of the judiciary.

Under the compulsion of the foregoing cases the inference that small paper packets, customarily used as containers for narcotics and dangerous drugs, contain such contraband must be rejected.[4] There was, therefore, no probable cause to arrest the person who appeared and assumed dominion over and possession of the packets.

Nevertheless, under no stretch of the imagination should the report of the gun and the powders have gone uninvestigated. Since the investigation might lead to the felonious charges which did in fact result, it was reasonable to stop and frisk the person who removed the handbag from the locker. Since this search produced a concealed weapon there was cause to arrest. The officers then had the unquestionable right to search the arrestee's person. This search resulted in the discovery of the packets in his pocket, and evoked, if it did not already exist, the right to search the handbag then in his immediate possession.

The question then posed is whether the prior search by the arresting officer taints the subsequent arrest and search.

---

[4]The writer can recall in his youth taking medicine which was prepared by carefully unfolding pharmaceutical paper, and sliding the powdered contents in a glass of water. Pulvis effervescence composition (Seïdlitz Powders), and other powders so packaged, may have been common household articles before the days of Alka-Seltzer and other patent medicines now commonly marketed in pill or capsule form but such packets are rarely observed now in the course of legitimate pharmaceutical trade.

"The 'fruit of the poisonous tree' doctrine—distilled from a number of decisions of the high court and articulated in *Wong Sun*—rests upon the fundamental thesis that the 'exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion.' (*Wong Sun* v. *United States, supra,* 371 U.S. at p. 485 . . .) In its explication of the doctrine, the Supreme Court went on to say 'We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' (371 U.S. at pp. 487-488 . . .)" (*People* v. *Superior Court, supra,* 71 Cal.2d 265, 271-272. See also, *Lockridge* v. *Superior Court* (1970) 3 Cal.3d 166, 169-170 [89 Cal.Rptr. 731, 474 P.2d 683]; *People* v. *Edwards, supra,* 71 Cal.2d 1096, 1105; *People* v. *Kanos* (1969) 70 Cal.2d 381, 386 [74 Cal. Rptr. 902, 450 P.2d 278]; *People* v. *Sesslin* (1968) 68 Cal.2d 418, 426-428 [67 Cal.Rptr. 409, 439 P.2d 321]; *People* v. *Stewart* (1966) 241 Cal. App.2d 509, 515-517 [50 Cal.Rptr. 630].)

"That degree of 'attenuation' which suffices to remove the taint from evidence obtained directly as a result of unlawful police conduct requires at least an intervening independent act by the defendant or a third party which breaks the causal chain linking the illegality and evidence in such a way that the evidence is not in fact obtained 'by exploitation of that illegality.' " (*People* v. *Sesslin, supra,* 68 Cal.2d at p. 428.)

In this case, as has been pointed out, the officers on the basis of the report received were warranted in accosting and interrogating the person who might claim dominion over the suspect locker. It is fair to assume that they would have done so regardless of whether the suspicion had been confirmed by the allegedly tainted search. In so doing they were entitled to frisk the suspect for weapons. The defendant by carrying a concealed weapon broke whatever causal chain linked his purported arrest with any probable cause predicated upon the tainted search. This act and its discovery furnished grounds for his arrest and attendant search independent of whatever illegality may have accompanied the prior search of the locker and handbag by the arresting officer. (See, *People* v. *Kanos, supra,* 70 Cal.2d 381, 386; *People* v. *Boyles* (1955) 45 Cal.2d 652, 654-655 [290 P.2d 535]; *People* v. *Perkins* (1970) 7 Cal.App.3d 593, 601 [86 Cal.Rptr. 585]; and *People* v. *Burke, supra,* 208 Cal.App.2d 149, 161-162.)

In *People* v. *Edwards, supra,* the court observed, "Here, independent of the evidence found in the search of the trash can, the officers had the information reported by Hansen, a 'private citizen' informer (see, e.g., *People* v. *Guidry,* 262 Cal.App.2d 495, 497-498 . . .). The evidence obtained by the search of the trash can was highly incriminating to defendants and corroborated Hansen's report. Whether on the basis of Hansen's report alone the officers would have gone to defendants' home, conducted the lengthy stakeout, and then after observing defendant Robert Edwards move hurriedly away from them following Hern's conversation with him, made one or both of the arrests and subsequent discovery of the marijuana and LSD is a matter of speculation on the present record. Thus even if it be assumed that there was probable cause for the arrest of one or both of the defendants apart from the evidence found in the search of the trash can, the prosecution has failed to establish that the evidence found after the arrests was not 'come at by exploitation of' the prior illegal search, and the evidence should therefore have been excluded. [Citations.]" (71 Cal.2d at p. 1106.) The foregoing disposes of any attempt to justify the arrest of defendant upon the information received from the manager, if it be assumed that it constituted probable cause for arrest.

In *Edwards* the court further stated, "It does not follow from this decision, however, that the evidence obtained after the arrests is inevitably inadmissible. Upon a retrial the prosecution may be able to establish that the evidence in question is not the 'fruit' of the prior illegal search and that defendants were arrested upon probable cause apart from the evidence found in the trash can." (*Id.,* at p. 1106.) Here the testimony that the suspect was carrying a concealed weapon furnished evidence that there was probable cause for his arrest apart from what the officer had observed in his locker and handbag.

"There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances. [Citations.]" (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]. See also, *People* v. *Superior Court, supra,* 3 Cal.App.3d 648, 659; *People* v. *Barrett, supra,* 2 Cal.App.3d 142, 147; and *People* v. *Plane, supra,* 274 Cal.App.2d 1, 4.)

The peculiar circumstances of this case demonstrate that the original observations and seizure by the officers were not unreasonable, or, in any event, if they were in a constitutional sense, they did not taint the subse-

quent detention, frisk, arrest and search of the defendant, and the seizure of the contraband then in his possession and control.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied November 13, 1970, and appellant's petition for a hearing by the Supreme Court was denied December 17, 1970.