UNITED STATES of America

v.

Richard J. SMALL.

Crim. A. No. 68–289.

United States District Court

D. Massachusetts.

March 18, 1969.

Robert D. Canty, Asst. U. S. Atty., United States Department of Justice, Boston, Mass., for the Government.

George A. Brochu, Jr., Boston, Mass., for defendant.

## MEMORANDUM OF DECISION AND ORDER

FRANK J. MURRAY, District Judge.

This case, an indictment charging defendant Richard J. Small with violation of 26 U.S.C. § 4744(a) (1),[1] came on to be heard on defendant's motion under Rule 41(e) (1) (Fed.R.Crim.P.) to suppress the contents of a locker seized without a warrant by one Gruden, a special agent of the Bureau of Narcotics and Dangerous Drugs. Defendant also moved for a ruling to exclude from evidence statements made by him to Gruden.

After a hearing, the court found facts which, for the purpose of these motions, may be summarized as follows. American Locker Company employed one Arthur Fortune to service and inspect its lockers situated at the Harvard Square subway station of the Massachusetts Bay Transportation Authority in Cambridge.

Upon deposit of a coin, a locker could be used exclusively by the customer-depositor for a 24-hour period, but the Company reserved the right to inspect the locker at any time. Inspections of all lockers at the station were routinely conducted at 10- to 14-day intervals. On or about February 1, 1968, Fortune received a call from the Cambridge Police, advising that the police believed the lockers in the station were being used for storage of contraband drugs, and requesting Fortune to notify the police when he found anything which might be a contraband drug.

On February 14, 1968, Fortune inspected all lockers in the station. His written record of inspection was admitted in evidence without objection. When he opened locker 725, Fortune saw two brown paper bags and a blue and white box. Thinking one of the bags might contain food, he opened it and found a substance that looked to him like oregano; but, after smelling it, he believed it was marihuana. He had found marihuana in lockers prior to February 14, 1968. He opened the blue and white box, and found a scale. He then telephoned special agent Gruden and talked with him about the contents of locker 725. Fortune and Gruden had not met or talked with one another prior to this call.

Gruden went to the station in response to the telephone call. Fortune told him on the telephone that he was in the employ of the American Locker Company and while making a routine check of the Company's lockers at the Harvard Square subway station he found in locker 725 a brown paper bag and a blue and white box; that Fortune thought the bag contained food and he opened it; that he saw in the bag what he thought to be oregano and later suspected to be marihuana; that inside the box was a small

---

1. In relevant part, the statute provides as follows:

It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 4741 (a)—

(1) to acquire or otherwise obtain any marihuana without having paid such tax * * *.

scale; that he then called the Federal Bureau of Narcotics to advise of his observations. Fortune also told Gruden on the telephone that he could not remain in the immediate vicinity of the locker, and suggested that he (Fortune) change the lock to make it impossible for the holder of locker key 725 to gain access to the locker. Gruden agreed Fortune should do so, and the lock was changed.

Gruden, with another agent and without a search warrant, proceeded to the station. Fortune met them there about 11:00 a. m., went to locker 725, opened it, and removed the box and two paper bags. Gruden inspected the substance in one of the bags and concluded it was marihuana. Gruden's five and one-half years' experience as agent in the narcotic and drug enforcement field enabled him to identify marihuana. The contents were returned to the locker, and locked under the lock previously changed. Gruden kept the locker under surveillance, and removed the contents between 4:00 and 5:00 p. m. Gruden left the station about 5:00 p. m.

On the following day, Gruden, at his office, received a call from someone at the Company who advised that a call had been received from one requesting the Company's assistance in opening locker 725. Gruden forthwith returned to the locker area of the station. He was dressed by design in a manner not indicating he was a law enforcement officer. He saw a young man, who he testified was the defendant, "lingering" near locker 725.

Gruden engaged the defendant in conversation and the following colloquy ensued: Gruden asked defendant if he was expecting someone from American Locker Company, and, when defendant replied he was, Gruden identified himself as a representative of the Company; upon inquiry, defendant said he was interested in locker 725 and had a key to that locker; defendant, upon handing the key to Gruden said he had in the locker a brown paper bag "containing some stuff" and a blue and white box, all of which he had placed in the locker the day before. Gruden then took the key handed to him by defendant and used it in the lock of locker 725, but the key did not work. He then used a master key and unlocked the locker, and told defendant to take his possessions from the locker. When defendant opened the door of the locker, Gruden placed him under arrest.

Defendant challenges the search of the locker and seizure of its contents on the ground that it was violative of the Fourth Amendment in that (1) no warrant had issued authorizing the search, and (2) the search was not incident to a lawful arrest. He contends that the statements made by him to Gruden are not admissible in evidence because Gruden failed to give him the cautionary warnings required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Turning to the challenge made to the search and seizure, there is no evidence the contents of locker 725, placed there by defendant February 14, 1968, were allowed to remain for a period greater than 24 hours. Fortune changed the lock and Gruden removed the contents within the 24-hour period. Both of these acts were intrusions upon the exclusive right of defendant to the locker. His motion raises the question whether the locker was, during the 24-hour period defendant had exclusive right to use it, constitutionally protected, and, accordingly, free from unreasonable search. The court finds that it was for the following reasons. Though located in a public place—the subway station—the contents of the locker were not "knowingly expose[d] to the public". Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The locker itself may be viewed as "an area where, like a home * * * and unlike a field * * * a person has a constitutionally protected reasonable expectation of privacy * * *." Id. at 360, 88 S.Ct. at 516 (concurring opinion of Mr. Justice Harlan). By its very design the locker operated to conceal as well as safeguard the contents from persons having no right to know about them or interfere

with them. In respect of "expectation of privacy", the private use of locker 725 by defendant cannot be meaningfully distinguished from the private use of the public telephone booth held unlawfully "bugged" in *Katz*. The Supreme Court's concern, as demonstrated in *Katz*, is not with the particular place or thing searched, but rather its focus is on "what * * * [a person] seeks to preserve as private, even in an area accessible to the public * * *." *Id.* at 351, 88 S.Ct. at 511. Defendant sought to conceal and safeguard the contents of locker 725, and any intrusion therein and removal of the contents during the 24-hour period by Government agents must comply with Fourth Amendment standards.

 In applying these standards to the facts of this case, it is first necessary to consider when the search or seizure was made, and by whom. The inspection of the locker by Fortune was conducted in the ordinary course of the Company's business, and in the exercise of the right of inspection it reserved. The mere receipt by Fortune of the telephone call from the Cambridge Police did not, under the facts established, make Fortune their agent. *Compare* State v. Purvis, 438 P. 2d 1002 (Or. 1968) (evidence seized by maid cleaning hotel room at police urging held admissible). Fortune's inspection of the locker's contents, which he determined included marihuana, rises no higher than an observation of what was believed to be contraband by a citizen who had the right to be where he was, and was not the act of a law enforcement agent.[2] When, however, he changed locker 725's lock, he did so, acting not within the course and scope of the Company's business, but pursuant to Gruden's request, and for the purpose of interfering with defendant's right of access to the locker. The court finds Fortune was then acting solely for and on behalf of an agent of the Government, assisting in the enforcement of law. The act was unquestionably an intrusion on defendant's right of privacy. It was tantamount to exercise of dominion by a Government agent over the locker's contents.

 It is not necessary, however, to pause here to determine whether this intrusion violated the Fourth Amendment's proscription of unreasonable seizures, or to determine whether Gruden's prompt action might be found reasonable when tested by balancing the need to seize against the invasion which the seizure entails, the test referred to in Terry v. State of Ohio, 392 U.S. 1, 20–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for, even if changing the lock might be found reasonable, it does not follow that Gruden's subsequent search of locker 725 satisfied the strictures of the Amendment. After the lock was changed—and the need for immediate action no longer existed—Gruden did not obtain a search warrant. Gruden's search of the locker,

2. Although Fortune's conduct was constitutionally unimpeachable, it does not follow that the subsequent conduct of Government agents need not be tested against Fourth Amendment standards, for the reasons which follow. First, governmental interference with defendant's expectation of privacy greatly exceeded the scope of Fortune's inspection. *See* Terry v. State of Ohio, 392 U.S. 1, 19, 26–27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Second, Fortune seems best characterized as an informer, and not as a citizen who has lawfully or unlawfully obtained and furnished the Government with evidence sought to be used at trial. To the extent that Barnes v. United States, 373 F.2d 517 (5th Cir. 1967), and Gandy v. Watkins, 237 F. Supp. 266 (M.D.Ala.1964), cert. denied, 380 U.S. 946, 85 S.Ct. 1032, 13 L.Ed.2d 965 (1965), indicate a contrary result, this court is of the opinion that they should not be followed. Abel v. United States, 362 U.S. 217, 240–241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960), relied upon in *Gandy*, is distinguishable because there a warrantless search of a hotel room was conducted after the room's former occupant had paid his bill and vacated the premises, the Court expressly finding that, at the time of the search, the hotel "had the exclusive right to * * * possession [of the room]". See also the discussion of cases involving searches authorized by third parties, *infra* at 586.

contrasted with the preparatory step of changing the lock, was "full blown". In *Terry* the Court reiterated the principle that a search lawful at its inception may become unlawful as its scope broadens unless the further steps taken can independently satisfy Fourth Amendment requirements. *Id.* at 19–20, 26–29, 88 S.Ct. at 1878–1879, 1882–1884. Assuming, under *Terry*, that changing the lock was reasonable, application of this principle is warranted here because insisting on the customary Fourth Amendment tests at this stage preserves for the locker-renting public roughly the same protection against official intrusion enjoyed by other members of the public who do not "knowingly expose [their goods] to the public". Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967) ("exposes" in original).

■ Gruden's failure to obtain a warrant raises the question whether his conduct can be justified under any recognized exception to the requirement for a search warrant. The court finds that it cannot be justified. Since changing the lock foreclosed any foreseeable danger of removal or destruction of the contents, the exception for a search conducted when there is no time to get a warrant and the situation requires immediate police action (*see, e. g.,* Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298–300, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); McDonald v. United States, 335 U.S. 451, 454–456, 69 S.Ct. 191, 93 L.Ed. 153 (1948) (dictum)) does not apply. *Compare* Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (warrantless search of automobile); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (same, but question framed as whether there was probable cause for arrest). And no showing was made that it was difficult or impossible to obtain a warrant. *Compare* Hernandez v. United States, 353 F.2d 624 (9th Cir. 1965), cert. denied, 384 U.S. 1008, 86 S.Ct. 1972, 16 L.Ed.2d 1021 (1966) (warrantless search of bags at airport).

■ Nor can this warrantless search be justified on the ground that defendant, by giving the Company the right to inspect the locker, consented to the search. The evidence shows that the defendant consented to inspection of locker 725 by the Company only. He did not give the Company, nor did the Company reserve, any right to share with him use of the locker for storage. It has been repeatedly held that a person who confers a right to inspect or enter an area, without conferring an equal or similar right to the use or enjoyment of that area, does not authorize the other to consent in his behalf to a search by law enforcement authorities. *See* Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (search of hotel room authorized by hotel clerk); Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (search of tenant's house authorized by owner); Niro v. United States, 388 F.2d 535 (1st Cir. 1968) (search of tenant's portion of building authorized by landlord's caretaker).

■ As for the statements given by defendant to Gruden, they should not be suppressed for the reason, urged by defendant, that the cautionary warnings contained in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were not given. The questions asked by special agent Gruden were not posed in the context of a "custodial interrogation" as that term is used in *Miranda.* The statements must be suppressed, however, because they are the fruits of an unreasonable search. *See* Wong Sun v. United States, 371 U.S. 471, 484–487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (statements held "fruit" of unlawful entry and unauthorized arrest); People v. Rodriguez, 11 N.Y.2d 279, 286–287, 229 N.Y.S.2d 353, 357–358, 183 N.E. 2d 651, 653–654 (1962) (statements given when confronted with items seized by an illegal search inadmissible). Gruden posed the questions to defendant because he had examined the ˌcontents of

locker 725 and found marihuana. It cannot be said that, absent the unlawful search, defendant would have made the statements in question.

Accordingly, defendant's motion to suppress is allowed in all respects.