UNITED STATES, Appellee,

v.

Private (E–2) Lee E. HARPER, SSN
289–48–4902, United States
Army, Appellant.

CM 438082.

U. S. Army Court of Military Review.

28 Dec. 1979.

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Carlos A. Vallecillo, JAGC, and Captain Courtney B. Wheeler, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, Captain Brian X. Bush, JAGC, and Captain Glenn D. Gillett, JAGC, were on the pleadings for appellee.

Before CARNE, O'DONNELL and DRIBBEN, Appellate Military Judges.

OPINION OF THE COURT

O'DONNELL, Judge:

On the evening of 14 November 1978, Private Lee E. Harper, together with a fellow soldier, was returning to his organization located on Fliegerhorst Kaserne, an American Army post in the Federal Republic of Germany. As he came through the gate, a unit policeman informed him that a "contraband check" was being conducted and directed him to proceed to a nearby guard shack. As the appellant walked toward the building, he dropped a packet containing a substance which subsequent chemical analysis revealed to be heroin. The heroin was introduced at trial over objection.[1]

The appellant contends that the heroin was inadmissible because it was discarded in response to an illegal search. The Government's position, on the other hand, is that it was admissible as voluntarily abandoned property. The acquisition of abandoned property by the Government is not a seizure within the protection of the Fourth Amendment. *See Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). If, however, a person discards property in reaction to illegal police activity, he has not abandoned the property and may have the evidence excluded because of the resulting taint. *United States v. Robinson*, 6 M.J. 109 (C.M.A.1979).

We must, therefore, examine the activities of the police authorities as they related to the appellant. The contraband check on the night of 14 November 1978 was the result of a program initiated by the military commander responsible for Fliegerhorst Ka-

---

1. The appellant was convicted of wrongful possession of heroin in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. His sentence to dishonorable discharge, forfeiture of $250.00 pay per month for fifteen months, confinement at hard labor for fifteen months and reduction to the lowest enlisted grade was approved by the convening authority.

serne. The program was designed to limit access to the kaserne to authorized persons and to preclude the introduction of contraband goods, to include drugs. Testimony was adduced to show that the command was concerned with the drug problem and the security of the kaserne, which contained highly sensitive material. The checks and searches were conducted by unit police personnel. The testimony is conflicting in part as to the procedures to be followed under the program. Three unit policemen testified for the Government. One witness, Specialist Four Thomas Schulte, stated essentially as follows. The procedure with respect to a person attempting to enter the kaserne on foot was to check his identification card, inform him that a contraband check was being conducted, and direct him to a building close to the gate. When the person entered the building, he would again be informed by the unit policeman that a contraband check was being conducted. He would then be asked if he would consent to a search. If he consented, a search would be conducted. If he refused to consent, he would be denied access to the post.

A second witness, Specialist Five David Bianco, the noncommissioned officer in charge of the unit police detail, agreed with Schulte as to the procedure to be followed when the person consented to a search. Bianco's version differed, however, if the person refused to consent.

> [A]t that time we tell him he's being detained for reasons of suspicion of bringing illegal contraband onto Fliegerhorst Kaserne and if we do find contraband, it can not be held against you [sic] in a court of law. If we do find contraband, it can be used for identification purposes and elimination from the Army.

Bianco added that a person could refuse to accompany the police to the guard shack and would be permitted to leave the kaserne. A defense witness, a former unit policeman described a single unrelated incident which was consistent with Bianco's version of the procedures to be followed.

The third Government witness, Specialist Four Mitchell Kimball, did not testify as to the prescribed procedures, except to state that a person could refuse to go to the guard shack and depart the kaserne. The discrepancies in testimony, unfortunately, were never resolved.

The Court of Military Appeals has treated gate searches differently depending on geographical location. In *United States v. Rivera*, 4 M.J. 215 (CMA 1978), the Court upheld the validity of a random gate search conducted overseas without a showing of probable cause. The Court differed as to rationale but agreed as to result. In Chief Judge Fletcher's opinion, such searches may be analogized to border searches which are exempt from the Fourth Amendment requirement for warrants supported by probable cause. He concluded that under the circumstances the search in question was reasonable and sufficiently non-intrusive to pass constitutional muster. Judge Cook, without adopting the border-search analogy, concurred in the result on the ground that the procedures followed were reasonable within the meaning of the Fourth Amendment. Judge Perry merely concurred in the result. Gate searches within the United States are governed by more traditional—and stringent—Fourth Amendment requirements. *See United States v. Harris*, 5 M.J. 44 (CMA 1978).

We hold that the appellant's act in discarding the heroin was voluntary and not the result of illegal police activity. When the appellant dropped the packet, the unit police were in the process of conducting a legitimate gate search in an overseas command. *United States v. Rivera, supra.* Acquisition of the abandoned heroin by the Government, therefore, deprived the appellant of no right protected by the Fourth Amendment.

The appellant, however, contends that the contraband search was tainted in that the unit police, under the direction of Specialist Bianco, would not have given him the opportunity to decline to consent to the search. Essentially, the appellant is raising the failure of the Government to follow its

own regulations.[2] The difficulty with the appellant's argument is that his action in discarding the heroin was unrelated to any improper police activity. The proceedings had progressed only to the point where he had been directed to the guard shack. Absent the required nexus, the appellant's act amounted to a legal abandonment of the property. *See Fletcher v. Wainwright*, 399 F.2d 62 (5th Cir. 1968). *Cf., United States v. Robinson, supra.*[3]

The findings of guilty and the sentence are affirmed.

Senior Judge CARNE and Judge DRIBBEN concur.

2. The defense position, as reflected in its appellate brief, is that the command policy was as expressed by Specialist Schulte, viz, that a person could not be searched over his objection. We agree, notwithstanding the conflicting testimony. The program adopted for Fliegerhorst Kaserne appears to be modeled on guidelines set forth in Army Regulation 210–10, 12 September 1977, for searches on military reservations. The regulation provides at paragraph 2–23 that persons entering a post may be searched on the basis of either probable cause or "military necessity." The regulation provides further that incoming persons "should not be searched over their objection, but may be denied the right of entry upon refusal to consent to search." Although not so limited by its terms, it appears that this latter provision is not applicable to military personnel who are assigned to the particular post or who are otherwise authorized to be there. *See United States v. Harris*, 5 M.J. 44, 61 (CMA 1978);

*United States v. Poundstone*, 22 U.S.C.M.A. 277, 283, 46 C.M.R. 277, 283 (1973), (dissenting opinion of Judge Duncan).

3. Even if we were inclined to adopt the appellant's prospective-violation theory, the result would be unchanged in view of a recent decision of the Supreme Court. In *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), the Court held that the failure of a government agency to follow its own regulations did not require invocation of the exclusionary rule, as the regulations were not mandated by the Constitution and the failure to follow them did not deprive the accused of any right protected by the Constitution. The regulations in the instant case fall in the same category. *United States v. Rivera*, 4 M.J. 215 (CMA 1978). *See United States v. Holsworth*, 7 M.J. 184 (CMA 1979).