UNITED STATES, Appellee,

v.

Private (E–2) Joseph C. KOZAK III, SSN 578–80–7950, United States Army, Appellant.

SPCM 14393.

U. S. Army Court of Military Review.

28 Aug. 1980.

Major Elliot J. Clark, Jr., JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, and Lieutenant Colonel John F. Lymburner, JAGC.

Captain Karen S. Gillett, JAGC, argued the cause for the appellee. With her on the brief were Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, and Captain Stephen D. Smith, JAGC.

Before RECTOR, CARNE and O'DONNELL, Appellate Military Judges.

## OPINION OF THE COURT

RECTOR, Chief Judge and CARNE, Senior Judge:

The appellant was convicted of wrongful possession of one "plate" (13.81 grams) of marihuana (hashish), despite a specification alleging possession of eleven plates (152.81 grams), in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The sentence as adjudged and approved was a bad-conduct discharge, forfeiture of $279.00 per month for two months, confinement at hard labor for two months and reduction to the grade of Private (E–1). Article 66, UCMJ, 10 U.S.C. § 866, mandates review by this Court.

At issue before this Court is whether the police lawfully obtained the hashish.

Appellant's battalion commander authorized criminal investigators (CID) to arrest and search appellant. Authorization was based on information from appellant's company commander who relayed that a soldier had overheard a conversation between appellant and another soldier (Murphy) concerning the pick–up of a quantity of hashish that night from an unspecified rental baggage locker at the Friedberg, Germany train station. The battalion commander knew the informant and considered him reliable because he had cooperated in obtaining three drug offense convictions and he had strong religious beliefs and dislike of military drug use. Based on this information, the battalion commander telephoned the CID and requested a surveillance of the station and arrest and search of appellant. A search of the baggage lockers was not specifically authorized by the battalion commander because he did not know which locker the hashish was in and furthermore he had no authority. It was assumed that appellant would claim the drugs because his accomplice, Murphy, had duty that night. Later a description of appellant was obtained from the company commander and provided to the CID.

The chief of the CID drug suppression team instructed his subordinates to have all the baggage lockers searched in order to locate the hashish and to remove all but one piece. Thereafter, they were to apprehend and search the individual that appeared to remove the hashish. These instructions exceeded the authorization of the battalion commander to surveil, arrest and search appellant. At the request of the CID, the German police unlocked several lockers with a master key until they found the hashish in locker number six. The German police removed eleven plates of hashish and one was returned to the locker from which it was obtained. The German police then resecured the locker and the group (CID and German police) awaited the arrival of the person who was supposed to obtain the hashish.

Shortly after midnight the appellant appeared in the station, walked directly to the target locker, inserted a key, unlocked it, opened it, looked inside, slammed his fist down on the inside of the locker, slammed the wall locker shut without locking it or withdrawing the key, gazed toward the narcotics agents, grew angry, and exclaimed, "Aw shit." Immediately thereafter the appellant was arrested approximately four to five feet from the locker by the CID agents. After the arrest, a German policeman obtained and secured the hashish plate from the locker.

## INITIAL ILLEGAL SEARCH

■ Appellant claims that the plate of hashish obtained from the locker should have been suppressed as the fruit of the earlier, unlawful search and seizure of eleven plates. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We agree that a general search of all the lockers was not authorized by the battalion commander. *United States v. Ball*, 8 U.S.C.M.A. 25, 23 C.M.R. 249 (1957). Still unresolved is whether appellant retained a reasonable expectation of privacy regarding the plate in the locker after unlocking it, not inserting more money, not removing the key, slamming the door, turning his back on the locker and walking away in "disgust."

## ABANDONMENT AND EXPECTATION OF PRIVACY

■ Renters of public lockers enjoy an expectation of privacy. *United States v. Durkin*, 335 F.Supp. 922 (S.D.N.Y.1971); *United States v. Small*, 297 F.Supp. 582 (D.Mass.1969).

■ A renter can abandon[1] his or her locker, thereby losing an expectation of privacy and the right to challenge the reasonableness of searches and seizures under the Fourth Amendment, United States Constitution. *See Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). Appellant's sudden readiness to depart and leave the locker unsecured in a public place and in the control of no one is abandonment. *See United States v. Jackson*, 544 F.2d 407 (9th Cir. 1976); *United States v. Anderson*, 500 F.2d 1311 (5th Cir. 1974); *United States v. Smith*, 293 A.2d 856 (D.C. App.1972) (pouch found on floor of toilet stall in public restroom at bus terminal as defendant departed). His rushed and inculpatory actions resemble those suspects who drop and abandon evidence upon discovery of police surveillance. *See United States v. Martin*, 386 F.2d 213 (3rd Cir. 1967); *Vincent v. United States*, 337 F.2d 891 (8th Cir. 1964). Moreover, the locker rental contract indicates abandonment. According to a notice displayed on the lockers, the lease began with insertion of coins, withdrawing a key and locking the door; reopening ended the lease. More coins were required to rent the locker further. True, these terms were printed in German and probably were unintelligible to appellant, yet we judicially notice[2] that this is a common arrangement for coin–operated lockers at public transportation facilities. Beyond that, appellant understood the basic terms of the lease well enough to locate, unlock and utilize the locker without hesitation. Once appellant surrendered exclusive possession of the key to the locker by leaving it in the door he also surrendered a reasonable expectation of privacy. *See People v. Miller*, 19 Ill. App.3d 161, 310 N.E.2d 808 (1974). When appellant left the key in the unlocked locker he could not "exclude other persons from access" inasmuch as he failed to take "normal precautions to maintain his privacy." *Rawlings v. Kentucky*, —— U.S. ——, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Legally, this is no different from hotel or motel guests who abandon property left in their rooms once the term of occupancy expires. *Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 608 (1960); *United States v. Parizo*, 514 F.2d 52 (2nd Cir. 1975). In sum, it was inevitable that another patron would soon take advantage of this transportation convenience, and appellant could not reasonably have expected his cache to remain private once he left it unsecured in a public locker.

■ Abandonment must be voluntary; it cannot be the product of coercive, illegal police action. *United States v. Robinson*, 6 M.J. 109 (C.M.A.1979). Here the initial search did not trigger the relinquishing of

---

1. Abandon and abandonment have various definitions, such as "voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy . . . ." *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973). "The abandonment of property is the relinquishing of all, title, possession, or claim to or of it–a virtual intentional throwing away of it." *United States v. Cowan*, 396 F.2d 83, 87 (2nd Cir. 1968). "Abandon. To desert, surrender, forsake, or cede. To relinquish or give up with intent of never again resuming one's right or interest. To give up or to cease to use. To give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert. It includes the intention, and also the external act by which it is carried into effect." *Black's Law Dictionary* (5th ed. 1979). " 'Abandon' means to completely separate oneself from all further responsibility . . . (relinquishing control) (giving up) (yielding) (leaving) . . . ." Paragraph 4–44, DA Pamphlet 27–9 (22 October 1969), *Military Judge's Guide*.

2. Article 66(c), Uniform Code of Military Justice. Judicial notice may be taken of "such specific facts and propositions of generalized knowledge ·as are so universally known that they cannot reasonably be the subject of dispute . . . ." Paragraph 147, Manual for Courts–Martial, United States. 1969 (Revised edition). *See also* Federal Rules of Evidence, Rule 201(b), 28 U.S.C.A.

the locker. Instead, these facts reveal that once appellant discovered the legitimate police surveillance (authorized by the battalion commander before the illegal search) he unsuccessfully tried to disown his hashish and leave the locker. In addition, there was no abandonment in the face of impending illegal arrest because this arrest was also properly authorized. Although the battalion commander did not authorize the general search of the lockers, we find no nexus between this activity and appellant's subsequent actions. Private Kozak by his actions surrendered any expectation of privacy in the locker and cannot challenge the reasonableness of the later recovery of the plate of hashish.

We conclude the plate of hashish was properly admitted.[3]

Accordingly, the findings of guilty and the sentence are AFFIRMED.

O'DONNELL, Judge, dissenting:

I do not believe that the appellant abandoned the hashish. This issue was not litigated at trial and was raised for the first time by the Government at this level. At trial, the Government had a tripartite theory of admissibility: (1) The appropriate commander properly authorized the search of the locker based on probable cause; (2) The German police properly entered the locker in accordance with regulations, a copy of which was posted next to the locker; (3) The police conducted the search incident to a lawful apprehension. The judge suppressed ten of the eleven plates of hashish without giving a reason for his ruling. The defense position before us, as at trial, is that the initial search of the locker was illegal and tainted the subsequent search and seizure. The Government on appeal in addition to the abandonment theory contends that the evidence is admissible as the result of a search incident to a lawful apprehension. The argument is that as the apprehension was based on previously existing probable cause, any taint from the earlier search was dissipated.

The initial search of the locker was clearly illegal. The commander not only did not authorize that search but had no authority to do so. The Government relies on *United States v. Ball*, 8 U.S.C.M.A. 25, 23 C.M.R. 249 (1957), in support of its theory of admissibility by reason of search incident to a lawful apprehension. *Ball*, under facts similar to those in the instant case, held that an illegal search and seizure "does not render the subject matter forever immune from search and seizure," so long as the evidence could be independently seized. 8 U.S.C.M.A. at 30, 23 C.M.R. at 254. The Court found that the search conducted incident to the appellant's apprehension was legitimate notwithstanding an earlier illegal search because it was based on an independent source.

Like *Ball*, the facts in the instant case support the conclusion that there was an independent source of probable cause to apprehend the appellant. Unlike *Ball*, the facts do not support a search of the locker incident to the apprehension. The search cannot be based on the need of the military police to secure weapons. They knew there were no weapons in the locker. Nor can the search be justified on the basis of preventing the removal or destruction of evidence. The appellant was surrounded by a phalanx of military and German policemen four or five feet from the locker. He could not have reached into the locker under the circumstances. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).[1] Accordingly, I agree with the implicit holding of the majority that the only way to overcome the illegal search and seizure is if the appellant can be considered to have abandoned the property.[2]

3. Because we find appellant abandoned an expectation of privacy in the locker, unlike the dissent, we do not reach the question whether the search was incident to arrest.

1. *Ball*, it will be noted, was decided before *Chimel*.

2. The Government likewise cannot prevail on the exigent circumstances theory in view of the number of policemen available to secure the locker pending receipt of a valid authorization to search. Moreover, the locker could be easily secured by renting it for another 24 hours by the minor expenditure of 50 pfennigs (or the

Abandonment, of course, is a recognized principle in the area of search and seizure. A person who has abandoned property has removed himself and his property from the protections of the Fourth Amendment and cannot complain if the property is thereafter acquired by law enforcement authorities and produced in evidence at his trial. *See Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *United States v. Harper*, 8 M.J. 708 (A.C.M.R.1979).

A person who has abandoned property in the context of a search and seizure situation has abandoned his expectation of privacy, which is what the Fourth Amendment is designed to protect. One danger in considering the abandonment issue is to view it strictly in terms of property law rather than as a voluntary relinquishment of an expectation of privacy. In the search and seizure sense "what is abandoned is not necessarily the defendant's property but his reasonable expectation of privacy." *City of St. Paul v. Vaughn*, 306 Minn. 337, 343, 237 N.W.2d 365, 371 (1975). (Citations omitted.) *See United States v. Colbert*, 474 F.2d 174 (5th Cir. 1973); *United States v. Edwards*, 441 F.2d 749 (5th Cir. 1971). Thus, unlike the majority, I do not find it particularly significant that the lease of the locker may have expired. Likewise, the presence of the German language sign next to the locker cannot, in my opinion, be used to demonstrate the appellant's knowledge of the conditions of rental or anything else. If the appellant had seen the sign, a fact undeveloped at trial, in all probability he never proceeded beyond the heading.[3]

As I view the facts relating to abandonment, which indeed are sparse in view of the fact the issue was not litigated, I cannot conclude the appellant intended to abandon the hashish. Nothing significant happened in the few seconds that elapsed after the appellant opened the locker door, uttered

his scatological imprecation, and slammed the door to warrant a conclusion that he intended to abandon his expectation of privacy. He was angry, to be sure. But it is more reasonable to conclude that he wished to retain the remnants of his cache rather than lose the whole amount. Even the fact that he had moved four to five feet from the locker is not determinative. He could just as well have been leaving to obtain 50 pfennigs to relock the locker or to call his supplier to find out what happened. The important point is that by leaving temporarily he does not necessarily relinquish his expectation of privacy. In sum, I am not satisfied that the Government has established that the appellant abandoned the property. Accordingly, I would set aside the conviction and dismiss the charges.[4]

---

economy plan of 72 hours for one Deutsche mark).

3. "Benutzungsbedingungen fur das Vermieten von Gepack–Schliessfachern." (Umlauts omitted.)

4. Even if it could be concluded that the appellant intended to abandon the property, it appears that he did so in the face of the illegal search and seizures previously conducted by the law enforcement authorities. This, of course, is not voluntary abandonment justifying the subsequent seizure by the police. *United States v. Robinson*, 6 M.J. 109 (C.M.A.1979).