UNITED STATES

v.

Lance A. RENGEL, 359 50 4969, Lance Corporal (E–3), U.S. Marine Corps.

NMCM 82 4836.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 21 April 1982.

Decided 29 April 1983.

LCDR David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

LT Philip J. Shebest, JAGC, USNR, Appellate Defense Counsel.

LCDR R. Clayton Seaman, Jr., JAGC, USN, Appellate Government Counsel.

Before ABERNATHY, Senior Judge, and BARR and MALONE, JJ.

ABERNATHY, Senior Judge:

Contrary to his pleas, appellant was convicted at a special court-martial trial by military judge alone of one specification of possession of Lysergic Acid Diethylamide (LSD) in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892, and one specification of wrongfully preventing the seizure of evidence in violation of Article 134, UCMJ, 10 U.S.C. § 934. Appellant was sentenced to be confined at hard labor for four months, to forfeit $250 pay per month for four months, to be reduced to pay grade E–1, and to be dis-

charged from the service with a bad-conduct discharge. The convening and supervisory authorities approved the sentence as adjudged. Appellant has assigned five errors before this Court, the first of which merits some discussion.

At 2000 on 4 November 1981, Major Heck, the XO of the Mountain Warfare Training Center at Bridgeport, California, heard loud music coming from Building 4020, a quonset hut being used as an enlisted barracks. Upon entering the building in order to tell the occupants to turn the music down, Major Heck detected an odor of marijuana. Since he was familiar with this odor, he went towards the rear of the hut, where the odor was stronger, to investigate. In the rear of the hut is a common area/recreation area; therein he found four Marines, including appellant. Since the odor of marijuana was strongest in this area, and since there were no other occupants in the building at the time, the Major placed the four Marines under apprehension for suspected use of marijuana. After a pat-down search produced negative results, the Major ordered the Marines to stand by their wall lockers, and he then started searching their wall lockers. During this search, the appellant walked quietly out of the building and went next door to his quonset hut, Building 4018, allegedly to go to his wall locker to stand by for Major Heck's wall locker search. Major Heck noticed that appellant was leaving and yelled at him to stop, but apparently appellant did not hear him. (Appellant was acquitted at trial of a charge of disobeying a lawful order to stop, in violation of Article 90, UCMJ, 10 U.S.C. § 890.) The Major ran after appellant and caught up with him inside his hut, where he saw appellant appear to throw and then kick something towards a wall locker. Concurrently, he heard the sound of a plastic object bouncing off either the wall or a wall locker. Upon closer examination, he found a plastic container on the deck two feet away from appellant. The contents of this container were later revealed to be tablets of LSD.

Citing *United States v. Robinson,* 6 M.J. 109 (C.M.A.1979), appellant contends in his first assignment of error that his alleged act of casting away the container of LSD was the product of an illegal apprehension by Major Heck, and, as such, the military judge erred in admitting the LSD into evidence. It is appellant's position that Major Heck had no logical basis to conclude that any or all of the four Marines in Building 4020 had been engaged in, or witness to, the use of marijuana. Thus, the question appellant would have us resolve is whether his apprehension by Major Heck was based on probable cause. That is putting the cart before the horse, however. First, we must determine whether or not *Robinson* is even applicable to appellant's situation. We think it is not. But, for the purpose of this discussion, we shall assume, without deciding, that appellant's apprehension was not based on probable cause.

The question that *Robinson* poses is whether the government has procured items of evidence through exploitation by the police of an illegal arrest. When appellant in *Robinson* realized that a military police investigator was conducting consent searches outside a barracks he was about to enter, he turned around and fled. The investigator gave chase because he suspected appellant was then in possession of some type of prohibited drug. It was the investigator's intention to apprehend and search Robinson for such matter. During the chase, the investigator observed pieces of paper, later revealed to contain heroin, coming from appellant's pockets. The Court ruled that Robinson had not abandoned the property, thereby *removing himself from* the protections of the Fourth Amendment, but rather discarded it in reaction to the investigator's attempted illegal apprehension. Thus tainted, the evidence was subject to the exclusionary rule.

Had appellant in the case *sub judice* fled from Major Heck all the while discarding the LSD container from his person while the Major was giving chase, then such facts would square with the circumstances in *Robinson.* But that is not what happened here. Rather, Major Heck had ef-

fected the apprehension of appellant and had conducted a thorough pat-down search of appellant that revealed *nothing.* Subsequently, while the Major's attention was occupied in searching the wall lockers in Building 4020, appellant slipped away to his barracks, where we can only assume he had secreted the container of LSD.[1] In so doing, appellant thereby removed himself in time, place, and derivation from the apprehension at Building 4020. Any direct chain of causation that might have emanated from the apprehension at Building 4020 was now broken by appellant's independent actions. In *United States v. Mitchell,* 12 M.J. 265 (C.M.A.1982), which involved a situation where the accused had thrown two packets of contraband outside the window of his apartment where he had just been apprehended by CID agents, Judge Cook, after citing *Robinson* in his concurrence, stated:

It seems to me, however, that when an arrested person surreptitiously throws an article into a public street, that action is his own, not an endeavor by the police to use an illegal arrest to seize the items.

*Id.* at 270–271. Such is the situation in the case *sub judice.* Appellant's independent retrieval of the LSD container and then his voluntary abandonment of the ʾcontainer cannot be characterized as foreseeable results of the apprehension at Building 4020. Appellant's actions were his own, and as a consequence, he will be held accountable for them. Thus, even though Major Heck's apprehension might not have been based on probable cause, his seizure of the LSD in Building 4018 was not in exploitation of the apprehension in Building 4020. Since appellant voluntarily abandoned the LSD, he removed himself and his property from any expectation of privacy and cannot later complain when it is produced in evidence at his trial. *See* cases cited in *United States v. Kozak,* 9 M.J. 929, at 933 (A.C.M.R.1980).

The assignment of error is accordingly dismissed.

 We shall pass on the other assignments of error briefly. The evidence of record, specifically the testimony of Major Heck, clearly proves appellant's guilt of the offenses charged beyond a reasonable doubt. Although the defense case presented a different version of what transpired in Building 4018, namely that appellant never did make a throwing and kicking motion, we find, as did the trial judge, the credibility of Major Heck unshaken. Appellant's actions were done with the specific purpose of preventing the seizure of this contraband by the Major, who was in hot pursuit. Furthermore, appellant's act of throwing and kicking away the container of LSD tablets clearly falls within the purview of 18 U.S.C. § 2232. *United States v. Fishel,* 12 M.J. 602 (A.C.M.R.1981). Although appellant was charged with "throwing away" the LSD rather than "staving, breaking, throwing overboard, destroying, or removing" the LSD, as specifically enunciated in § 2232, we believe that the term "throwing away" specifically places appellant on notice of what he is being charged with and protects him against double jeopardy. Finally, we find an unsuspended punitive discharge to be particularly appropriate for this Marine who stands convicted for possession of LSD and has two prior nonjudicial punishments in his record.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

Judge BARR and Judge MALONE concur.

---

1. There is no evidence to indicate where the LSD container had been hidden. It would seem to us that had the Major missed the container during the pat-down search, which we doubt given the shotgun shell size of the container, appellant would have thrown the container out into the field during his flight, rather than onto the deck of his barracks. This leads us to the only reasonable conclusion that appellant had hidden the container somewhere within his barracks, Building 4018.